**WALL & OCHS, INC., Plaintiff,**

v.

**Ella GRASSO et al., Defendants.**

**Civ. No. B–77–332.**

United States District Court,
D. Connecticut.

Feb. 26, 1979.

**1090**

Richard L. Albrecht, Stewart I. Edelstein, Cohen & Wolf, Bridgeport, Conn., for plaintiff.

Carl R. Ajello, Atty. Gen., Bernard F. McGovern, Jr., Charles A. Overend, Asst. Attys. Gen., Hartford, Conn., for Ella Grasso.

Walter J. Sidor, Jr., Luby, Basine & Sidor, Hartford, Conn., for Conn. Opticians Assoc., Inc.

## RULING ON DEFENDANTS' MOTIONS TO DISMISS

DALY, District Judge.

Plaintiff, a Pennsylvania corporation with six Connecticut retail outlets engaged in the sale and fitting of prescription eyeglasses, seeks a declaratory judgment and injunctive relief against the enforcement of certain Connecticut statutes and regulations governing opticians and retail optical outlets. The defendants are Ella Grasso, Governor of the State of Connecticut; the Connecticut State Commission of Opticians and five of its members; and the Connecticut Opticians Association, Inc.

The complaint is in three counts. The first count challenges the statutory composition of the Connecticut Commission of Opticians. Plaintiff alleges that the requirement that three of the five Commissioners be licensed as opticians by the State of Connecticut is unconstitutional on a number of grounds. In the second count, plaintiff challenges as unconstitutional the defendants' restrictions on advertising by opticians. In the third count, plaintiff challenges several aspects of the state's licensing requirements for opticians. Plaintiff also seeks damages under 42 U.S.C. § 1983. Defendants have moved to dismiss on the grounds that this Court should abstain from hearing these claims, that the plaintiff lacks standing, and that the complaint fails to state a claim upon which relief can be granted.

### Damages

This Court previously has granted partial summary judgment in favor of all defendants except the Connecticut Opticians Association. Judgment was granted on Eleventh Amendment grounds in favor of these defendants on the damage claims against them in their official capacities. As no service has been made upon these defendants in their individual capacities, the claims presented for damages against defendants other than the Connecticut Opticians Association are hereby dismissed.

### Composition of the Connecticut Commission of Opticians

Section 20–140 of the Connecticut General Statutes provides for the appointment by the Governor of a five-person Commission of Opticians.[1] The statute requires that three of the five commissioners be licensed

---

1. C.G.S. § 20–140 provides:

   There shall be in the department of health services a commission of opticians, consisting of five persons appointed by the governor, three of whom shall be registered as licensed opticians in this state, shall have at least ten years' practical experience in the state and, at the time of appointment, shall be actively engaged as opticians in this state; and two of whom shall be public members. Not fewer than two of said commissioners shall be owners of optical establishments, stores, shops or offices. The governor may appoint the optician members from a list of

   names submitted by the Connecticut Opticians' Association. The list submitted by the Connecticut Opticians' Association to the governor shall be certified as to the qualifications of the nominees by the commission of opticians and shall consist of three names for each vacancy.

   Prior to January 1, 1979, the statute required that the Commission be composed exclusively of licensed opticians. It was amended by P.A. 77–614, An Act Concerning Reorganization of Executive Branch of State Government (June 2, 1977) (generally effective January 1, 1979).

opticians, and provides that the governor may choose the optician members from a list provided by the Connecticut Opticians Assoc. Plaintiff claims that a number of its employees, as well as unnamed members of the public, are qualified by reason of training and experience to be members of the Commission of Opticians. In the first count, plaintiff alleges that C.G.S. § 20–140 violates both the equal protection clause by excluding from membership on the Commission persons who are not licensed opticians, and the due process clause by creating an irrebuttable presumption that those who are not licensed opticians are not qualified to serve on the Commission.[2]

■ Defendants argue that plaintiff lacks standing under this count. Plaintiff, being a corporation, is not capable of serving on the Commission. Plaintiff, rather, asserts that the denial of the rights of its employees causes it direct injury. In particular, plaintiff claims that the actions of the Commission adversely affect its business by increasing the price, discouraging the purchase, and reducing the availability of its goods and services, and by reducing competitive forces in the ophthalmic industry. "(A) party facing economic injury as a result of the deprivation of the rights of others has standing to raise the constitutional issue." *Gajon Bar & Grill, Inc. v. Kelly,* 508 F.2d 1317, 1322 (2d Cir. 1974). *See Barrows v. Jackson,* 346 U.S. 249, 73 S.Ct. 1031, 97 L.Ed. 1586 (1953); *Pierce v. Society of Sisters,* 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070 (1925). As such, plaintiff has satisfied the requirements of standing with regard to this count, at least for the purposes of a motion to dismiss.

■ Defendants further suggest that this Court should abstain from deciding the issues presented by this count. Abstention is not appropriate where, as in this case, the challenged state statute is clear on its face and is not susceptible of an interpretation which might obviate or substantially alter the posture of the constitutional issues presented. *Brown v. First National City Bank,* 503 F.2d 114, 118 (2d Cir. 1974). *See Colorado River Water Conservation District v. United States,* 424 U.S. 800, 814, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976); *Naylor v. Case & McGrath, Inc.,* 585 F.2d 557 (2d Cir. 1978). The challenged statute plainly limits the eligibility for three of the five positions on the Commission of Opticians to those who are licensed as opticians by the State of Connecticut. This being so, there is no need for a state court interpretation of the statute. And a decision by this Court would not unduly disrupt a complex regulatory scheme nor a newly evolving policy of the state. *Cf. Burford v. Sun Oil Co.,* 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943); *Naylor v. Case & McGrath, Inc., supra.* Accordingly, this Court will not abstain with respect to this count.

The substantive issues raised in this first count have been considered previously in *Friedman v. Rogers,* —— U.S. ——, 99 S.Ct. 887, 59 L.Ed.2d 100 (1979). At issue there was a Texas statute which required in pertinent part that " '[a]t all times there shall be a minimum of two-thirds of the [Texas Optometry] board who are members of a state optometric association which is recognized by and affiliated with the American Optometric Association'." *Rogers v. Friedman,* 438 F.Supp. 428, 432 (E.D.Tex. 1977) *aff'd* 47 U.S.L.W. 4151 (Feb. 21, 1979).[3] Plaintiffs, among them optometrists who apparently were not members of a recognized state optometric association, challenged the statute on the grounds that it violated their right to equal protection and due process. The state claimed that the classification was rational in that mem-

---

**2.** At the time of the filing of the complaint, § 20–140 required that the Commission be composed exclusively of licensed opticians. *See* n. 1, *supra.* Plaintiff argues that the amendment, providing for two public members, "does not affect the validity of plaintiff's claim . . . [and does] not remedy the constitutional defects which plaintiff asserts because it still al-

lows two-thirds of the members of the Commission to be selected from individuals who are neither disinterested nor unbiased."

**3.** The lower court in *Rogers* was a three-judge district court. Appeal to the Supreme Court, therefore, was a matter of right under 28 U.S.C. § 1253.

bers of the Texas Optometry Association (TOA), apparently the only such recognized association, would be more likely than non-TOA members to be economically independent, would have a greater likelihood of emphasizing the highest quality of eye care, and would be more inclined to enforce the relevant statute. In light of this response, the Court rejected the plaintiffs' equal protection and substantive due process claims, finding that the plaintiffs had failed to demonstrate the lack of any rational basis for the legislation. *Friedman v. Rogers,* —— U.S. at ——, 99 S.Ct. 887.

■ For the purposes of a motion to dismiss, the allegations of the complaint must be construed in the light most favorable to plaintiff and must be taken as true. *Jones-Bey v. Caso,* 535 F.2d 1360 (2d Cir. 1976). But even under this standard the factual differences between this case and *Rogers* do not justify reaching a different result here.[4] The legal standard is the same: the legislation is constitutional unless it is arbitrary and lacks any rational connection to a legitimate state interest. *Williamson v. Lee Optical Co.,* 348 U.S. 483, 75 S.Ct. 461, 99 L.Ed. 563 (1955); *Wall v. American Optometric Association, Inc.,* 379 F.Supp. 175, 191 (N.D.Ga.1974). As in *Rogers,* there are any number of rational reasons the legislature might have had in deciding to require that three members of the Commission of Opticians be licensed opticians. One obvious and probable reason the legislature might have had for deciding to require that some members of the Commission be opticians is to ensure that some of the Commissioners have some familiarity with or expertise in the business of opticianry. *Cf. Jaffe v. State Department of Health,* 135 Conn. 339, 349, 64 A.2d 330 (1949). The practice of opticianry falls within the field of public health, safety, and welfare, a field traditionally subject to the

broad exercise of the police power of the state. *Head v. New Mexico Board of Examiners in Optometry,* 374 U.S. 424, 428–29, 83 S.Ct. 1759, 10 L.Ed.2d 983 (1963). It is not the function of this Court to substitute its judgment for that of the state legislature as to matters within the realm of the legislature's discretion. *Williamson v. Lee Optical Co., supra; Nebbia v. People of State of New York,* 291 U.S. 502, 537–38, 54 S.Ct. 505, 78 L.Ed. 940 (1934). Because the challenged legislation clearly is rationally related to a legitimate state interest, and in view of the *Rogers* case, this count is dismissed for failure to state a claim on which relief can be granted.

Plaintiff cites *Gibson v. Berryhill,* 411 U.S. 564, 93 S.Ct. 1689, 36 L.Ed.2d 488 (1973), and *Wall v. American Optometric Association, Inc.,* 379 F.Supp. 175 (N.D.Ga. 1974), to support its claim that the challenged statute violates due process. The Court in *Rogers* distinguished those cases on the ground that they involved procedural due process, and were not applicable where the plaintiff was not facing charges before the Optometry Board. *Friedman v. Rogers,* —— U.S. ——, ——, 99 S.Ct. 887, 59 L.Ed.2d 100 (1979). Plaintiff here is asserting the rights of persons who are excluded from membership on the Commission, and not those who are to face charges before it. The reasoning of the court in *Rogers,* therefore, applies here, and these cases relied on by plaintiff do not support plaintiff's claim.

*Advertising Prohibitions*

■ In the second count plaintiff challenges the state's provisions governing advertising by opticians. Plaintiff alleges that the state's statutory and regulatory scheme, in conjunction with the "Code of Ethics" of the Connecticut Opticians Association, Inc., violates the plaintiff's rights to

---

**4.** *Rogers,* involved a statute requiring that two thirds of the Texas Optometry Board be not just optometrists but also members of a private association of optometrists. The statute challenged in the present case provides only that three of the five members must be licensed opticians—the other two members must be "public members." *See* P.A. 77-614, § 13(b)

(June 2, 1977). This case, then involves a statute that is less restrictive than the statute challenged in *Rogers.* It is true, in this case, that the statute provides for the submission of a list of nominees by the Connecticut Opticians Association, but the governor is not required to select an appointee from that list. *See* n. 1, *supra.*

due process, equal protection, and freedom of speech, constitutes an unreasonable interference with interstate commerce, and is an unreasonable exercise of the state's police power.

The validity of a large number of provisions is challenged. Section 20–154 of the Connecticut General Statutes gives the Commission of Opticians the power to make regulations concerning the granting and revocation of licenses and permits in the opticianry business.[5] The statute provides

that the Commission, after notice and hearing, may revoke or suspend licenses or permits for, among a number of other things, "conviction of publication or circulation of any fraudulent or misleading statement in connection with the operation of such business . . .." Section 20–141–23 of the Regulations of Connecticut State Agencies, and particularly subsection 15 of that section, contains numerous provisions regulating and prohibiting certain types of advertising.[6] Article I of the Code of Ethics of

---

**5.** C.G.S. § 20–154 provides:

The commissioner of health services, with advice and assistance from said commission, may make regulations concerning the licensing of any optician, the granting of any permit to any optical department or the certification of any licensed optician, mechanical optician, assistant licensed optician or assistant mechanical optician, and the suspension or revocation of any such license or permit, or with reference to the conduct of any such licensee or permittee and the manner in which any such licensed optical department is conducted. Any license to practice as a licensed optician or mechanical optician or to conduct any optical department may be suspended or revoked or reissued by said commission: and any act involving moral turpitude or lack of business ethics and integrity, as such a licensee, or any violation of any provision of this chapter or of any regulation concerning any optical department, or optician's office, store or establishment, shall be cause for such revocation or suspension. The certificate of any licensed optician, mechanical optician, assistant licensed optician or assistant mechanical optician or of any optical permittee may be revoked, suspended or annulled upon decision after notice and hearing by the Commission for any of the following reasons: Fraudulent, dishonest, illegal or incompetent or habitually negligent conduct of his business as such licensee or permittee; conviction of publication or circulation of any fraudulent or misleading statement in connection with the operation of such business . . . .

**6.** Pertinent parts of § 20–141–23 of the Regulations of Connecticut State Agencies provide:

The Commission, after notice and hearing, as provided in chapter 381 of the general statutes, may revoke, suspend or refuse to issue any optical license to practice, optical license selling permit, optical license processing permit or optical retail vendor permit, for cause; which shall include any of the following: (1) Fraud in procuring a permit or license; (2) fraudulent, dishonest or illegal conduct of such business as such permittee or licensee;

(3) conviction of publication or circulation of any fraudulent or misleading statement in connection with the operation of such business; . . . (5) the use of untruthful or improbable statements in advertising or elsewhere; . . . (7) fraud in representation as to the aid afforded by the use of optical glasses and kindred products; (8) any misrepresentation or untruthful statement in the sale or attempted sale of optical glasses and kindred products; and in the relative values of self-fitting of glasses, as against the fitting of optical glasses from given formulas; . . (11) false representation of optical goods or optical glasses or kindred products sold, dispensed or supplied; (12) misrepresentation to the public that the holding of an optical retail vendor permit certifies any skill in the permittee; or the making of any statement which might be construed by the public so that the public might be led into believing that the holder of an optical retail vendor permit is of equal skill to that of the holder of an optical license permit or an optician's license; . . . (14) conducting a store, office, shop or department in conjunction with or as a combination of a wholesale optical distributor in any manner that by its operation, representation or subterfuge may mislead the public or the individual consumer to believe that retailing costs are eliminated and that they are buying at prices equivalent to wholesale prices for resale; or the use of unfair methods of competition and unjustified price discrimination by selling or representing oneself as a wholesaler or as a manufacturer in a retail optical establishment; (15) making any statement or representation in any advertising printed or by radio, or making any statement or representation in any manner or form (A) which has the capacity or tendency to deceive or mislead the consumer, or which includes generalizations and implications which so deceive or mislead; (B) which attacks competitors or which reflects unfairly on a competitor's products, services or methods of doing business; (C) which lays claim to a policy or continuing practice of generally under-selling competi-

the Connecticut Opticians Assoc., Inc., also contains a number of provisions prohibiting certain types of advertising.[7]

Plaintiff, being engaged in the business of opticianry and being at least a potential advertiser, directly is subject to the challenged provisions. Its continued retention of a permit to operate retail optical outlets apparently is dependent upon its compliance with the challenged statutory and regulatory provisions here challenged. It is asserting its own right to be free from unconstitutional restraints on its ability to advertise. The motion to dismiss for lack of standing, therefore, is denied with respect to this count. See Baker v. Carr, 369 U.S. 186, 204, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962). For reasons to be discussed, however, the Court will abstain at this time from deciding the claims presented.

■ During the pendency of this case, the Federal Trade Commission has passed a rule concerning advertising of ophthalmic goods and services.[8] The rule became effective July 3, 1978. The rule prohibits generally the imposition by any state or local governmental entity or by any private association or person of any prohibition, limitation, or burden on the dissemination, by sellers, of information concerning ophthalmic goods and services. The rule does permit, as an exception to the general prohibition, the requirement of affirmative disclosure of a number of specific items of information, e. g. whether an advertised price for eyeglasses includes both frames and lenses. Otherwise, regulation of advertising by opticians (and other sellers of ophthalmic goods and services) is permitted only in the context of regulation of all retail advertising of consumer goods and services. Assuming the rule to be a valid exercise of the FTC's rulemaking power, see National Petroleum Refiner's Assoc. v. Federal Trade Comm., 157 U.S.App.D.C. 83, 482 F.2d 672 (1973), the rule preempts the field of the regulation of advertising by opticians. Gibbons v. Ogden, 22 U.S. (9 Wheat.) 1, 6 L.Ed. 23 (1824).

The state courts should be given the opportunity to interpret the challenged provisions in light of the FTC rule. First, many of the provisions are subject to interpreta-

tors; (D) which is a "bait" offer, wherein the customer does not have a fair opportunity to buy the advertised article; (E) which refers to cut prices or trade merchandise or other goods in such a manner as to mislead the public to believe that all of the merchandise sold by the advertiser is similarly low priced, when such is not the fact; (F) which makes untruthful or improbable statements; (G) which does not accurately describe, as to the materials and the types of lenses offered, the frames and/or the lenses advertised for sale; (H) which advertises the sale of any optical merchandise for stated prices without also stating in equally prominent manner the detailed quality, grade and special characteristics of such merchandise and prices; (I) which takes unfair advantage of preference by deception, misrepresentation or concealment of the origin of the goods sold; (J) which represents inferior goods to be goods of standard quality reduced in price without foundation in fact; (K) which fails to advertise specifically and clearly as to whether or not only frames or other supporting devices are offered for the advertised prices . . .

The Commission by any member of the Association of any of the acts hereafter set forth shall be regarded as being in violation of this Code of Ethics.

. . . . .

2. Violation of any of the Statutes of the State of Connecticut governing the practice of Opticianry.

3. Willful violation of any of the rules, regulations or procedures promulgated by the State Commission of Opticians or this Association.

4. Unprofessional conduct.

5. Publishing or circulating any statement tending to deceive or mislead the general public.

6. Improper or unprofessional advertising including claims of professional or technical superiority over that possessed by other licensed opticians.

7. Improper advertising, distributing or supporting literature, slogans or other forms of advertising based on claims of "discount", "budget", "savings", etc.

. . . . .

8. A Rule Concerning Advertising of Ophthalmic Goods and Services, 16 C.F.R. § 456.

7. Article I of the Code of Ethics of the Connecticut Opticians Association provides, in pertinent part:

tions which might obviate or at least substantially alter the posture of the constitutional issues presented. C.G.S. § 20–154 provides, for instance, that an optician's license may be revoked by the Commission for "(f)raudulent, dishonest, illegal or incompetent or habitually negligent conduct of his business . . . ." [9] In order to determine the constitutionality of this provision or its validity under the FTC rule, this Court would find it necessary to interpret the provision. Such interpretation best would be done by the state courts. *Railroad Comm. v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). A number of the challenged provisions are not as unclear as the cited example. Plaintiff in this case, however, has launched a broadside attack on the entire regulatory scheme and it would not be practical at this time to sift through the challenged provisions to determine which particular subsections are clear and which are not. There is sufficient room for interpretation in the statutory scheme as a whole to warrant abstention at this time.[10]

▇ Second, abstention is appropriate here on the basis that federal intervention at this time prematurely would interfere with an important policy interest of the state. This Court understands the recent Second Circuit decision in *Naylor v. Case & McGrath, Inc., supra*, as suggesting that the federal courts not intervene prematurely by deciding difficult questions of state law in an important area of state policy set forth in a pervasive regulatory scheme when the state courts have not had the opportunity to be presented with the relevant state law questions.[11] This is such a case.[12]

For all of the above reasons, it is appropriate to enter an order staying further proceedings on this count in this Court until the Supreme Court of Connecticut has been afforded an opportunity to interpret the challenged provisions of state law, and retaining jurisdiction to take such steps as may be necessary for the just disposition of the litigation should a prompt state court determination be prevented. *See England v. Louisiana State Board of Medical Examiners*, 375 U.S. 411, 413, 84 S.Ct. 461, 11 L.Ed.2d 440 (1964).

*Licensing Requirements*

The third count of the complaint encompasses a variety of constitutional challenges to various requirements contained in C.G.S. § 20–146 for obtaining a license to practice in Connecticut as either a licensed or a mechanical optician.[13]

---

**9.** *See* n. 4, *supra*.

**10.** *See* n. 5, *supra*.

**11.** In that case, the Second Circuit determined that this Court should have abstained from deciding a question of standing under state law. In so doing it stated: "The questions of state law presented here are not free of difficulty, and they bear importantly on the formation of enforcement policy around the relatively new and recently amended Unfair Trade Practices Act of the State, an important consumer protection statute." *Naylor v. Case & McGrath, Inc.*, 585 F.2d 557, 564 (1978).

**12.** The Court does not intend to suggest that the state court should be allowed to make final determinations as to the validity of the challenged provisions on constitutional grounds or under the FTC Rule, for these are questions of federal law and are properly before this Court. If the state courts are put on notice that plaintiff intends to litigate its federal claims in this Court, any state court determination of these federal claims will not have the effect of res judicata, and plaintiff will remain free to litigate its federal claims in this forum. *England v. Louisiana State Board of Medical Examiners*, 375 U.S. 411, 84 S.Ct. 461, 11 L.Ed.2d 440 (1964). But the state courts should be given the opportunity to determine the meaning and effect of the state law involved, and the existence of the FTC Rule may play some role in such a determination.

**13.** Section 20–146 provides:

(a) No person shall produce or reproduce, ophthalmic lenses and similar products or mount the same to supporting materials or fit the same by mechanical manipulation, molding techniques or other related functions, unless such person is licensed or registered by the commission of opticians. Said commission may issue license certificates as licensed optician, assistant licensed optician, mechanical optician and assistant mechanical optician to all persons who lawfully apply for the same, upon their submitting to the commission an acceptable written application, and after they have passed examinations as here-

In order to be licensed as a mechanical optician pursuant to § 20–146, one must apprentice for four years with either a licensed or mechanical optician, and must pass a written exam. To become a licensed optician, one must be qualified as a mechanical optician, apprentice for one year under the supervision of a licensed optician, and pass a written exam. Plaintiff claims that these requirements violate its right to equal protection and due process in that: 1) neither the four-year apprenticeship requirement nor the application of the apprenticeship requirements to persons holding licenses as opticians from other states have any rational relationship to the actual qualifications required for the practice of opticianry; 2) the statute places an unreasonable burden on opticians in general, as opposed to other licensed dispensers of eyeglasses (i. e., ophthalmologists and optometrists); and 3) the statute unreasonably burdens interstate commerce. Plaintiff also claims that the written examinations given pursuant to § 20–146 have not been job related or otherwise rationally related to the practice of opticianry in Connecticut.

The Court is satisfied that plaintiff has standing under this count. Plaintiff alleges actual economic injury as the result of the alleged unconstitutionality of the statute. Plaintiff is required to hire licensed opticians in order to carry on its business, and alleges that it is directly affected by the size of the relevant labor pool. It further alleges that it has in its employ persons who now are qualified to be licensed as opticians in the State of Connecticut but who are prevented by the statute from being so licensed and that, as a result, its business has been injured. Based on these allegations, plaintiff has met the requisites of standing for the purposes of this motion to dismiss. *Gajon Bar & Grill, Inc. v. Kelly, supra.*

There is an aspect of this count as to which abstention is appropriate. Plaintiff argues that Connecticut's statutes and regulations dictate that the required apprenticeships be undertaken exclusively in Connecticut. Defendants, on the other hand, put forth an interpretation of the provisions that would require the Commission to award credit for appropriate out-of-

inafter provided: (1) Mechanical optician. No person shall be admitted to take the examinations for a license to practice as a mechanical optician until he has satisfied the commission that he is eighteen years of age; that he is a person of good moral character and is free of communicable disease, has served as a registered apprentice of not less than four calendar years' full-time employment under the supervision of a licensed optician or a mechanical optician in an optical establishment, office, department, store, or laboratory where prescriptions for optical glasses from given formulas have been filled, and has acquired experience in the producing and reproducing of ophthalmic lenses, mounting the same to supporting materials, of which one year, at least, shall have been acquired within the five years last preceding the date of such application. (2) Licensed optician. Any person shall be admitted to take the examinations for a license to practice as a licensed optician who has the qualifications required of a mechanical optician and who has acquired experience in the fitting of ophthalmic lenses to the eyes by mechanical manipulation, molding technique or other related functions, of which one year, at least, shall have been acquired within the five years last preceding the date of such applica-

tion, under the supervision of a licensed optician.
(b) All examinations shall be conducted in the English language and shall be written and oral as well as by practical demonstration. The examinations for mechanical optician shall include inquiry into the theory and practice of the fundamentals of mechanical and technical knowledge, optics, mathematics, physics, chemistry and physiology as they pertain to the functional knowledge and application of producing and reproducing ophthalmic lenses and the mounting of the same to supporting materials. The examinations for licensed optician shall include inquiry into all of the functions and subjects required for the mechanical optician, and shall also include further examination into the theory and practice of fitting, adapting and designing of optical glasses from given formulas, or kindred products, to the ultimate wearer by mechanical manipulation, molding techniques or other related functions. Such examinations shall be conducted at least once each year by the department of health services, under the supervision of the commission. The examinations shall be prescribed by the commission, with the consent of the commissioner of health service.

state experience, and claim that the Commission has and continues to award such credit in appropriate circumstances. Connecticut's law with respect to the Commission's duty to give credit for out-of-state experience, however, is unclear and can be read to support either plaintiff's or defendants' position.[14]

This aspect of this case thus falls squarely within the doctrine of *Railroad Commission of Texas v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). A particular aspect of state law is being challenged on federal constitutional grounds, and the challenged provisions are susceptible to an interpretation which might obviate or substantially alter the posture of the constitutional issues presented. Abstention is thus appropriate to provide the opportunity for a dispositive state court interpretation of the challenged law. *Colorado River Water Conservation District v. United States, supra.* This is particularly true here in that an erroneous interpretation by this Court could significantly disrupt the state's scheme for licensing opticians. *Naylor v. Case & McGrath, Inc., supra.* Accordingly, this Court at this time will refrain from determining any issues here presented the posture of which might

---

14. C.G.S. § 20–159 provides, in pertinent part:

> Each person entering into employment . . . for the purpose of obtaining practical experience and skill required under the provisions of this chapter shall register as an apprentice with the commission and the computation of any period of apprenticeship shall commence at the date of such registration. . . . Any person who served part of his apprenticeship in any other state or country not requiring such registration shall be obliged to give proof of such service satisfactory to the commission.

Defendant contends that it is readily apparent from this provision that those who have appropriate experience in states not requiring registration shall be given credit. If this is so, defendants argue, it must also be that those having experience in states that *do* require registration must be given credit.

C.G.S. § 20–145 provides:

> A licensed optician, for the purposes of this chapter, shall be defined as follows: One having a knowledge of optics and skilled in the technique of producing and reproducing ophthalmic lenses and kindred products and mounting the same to supporting materials and the fitting of the same to the eyes. A mechanical optician, for the purposes of this chapter, shall be defined as follows: One having a knowledge of optics and skilled in the technique of producing and reproducing ophthalmic lenses and kindred products and mounting the same to supporting materials.

Defendants argue that because the definitions of licensed and mechanical opticians do not refer to licensing or registration in Connecticut, but define licensed and mechanical opticians only by reference to levels of knowledge and skill, it is clear that the legislature intended that applicants should be given credit for periods of apprenticeship wherever undertaken if undertaken with persons sufficiently skilled and knowledgeable.

While the Court does not find defendants' interpretation of the statutes and regulations beyond the realm of reason, it notes that defendants' position is based more on interpretation than on clear and express authority and that there are other provisions tending to indicate that credit should be given only for apprenticeships undertaken in Connecticut. Subsection (a) of section 20–141–25 of the Regulations of Connecticut State Agencies, for example, provides:

> The computation of any period of apprenticeship as an optical apprentice shall commence at the date of registration, provided such apprentice is employed in the State of Connecticut and in an establishment which has a licensed optical department . . . under the supervision of a licensed optician or a mechanical optician.

Subsection (b) of that section provides, in part:

> Any person who registers with the Commission . . . and is employed in an establishment which does not comply with the conditions set forth in subsection (a) shall be recorded but shall not have such period accredited as time spent to qualify for examination except after satisfactory proof has been furnished the Commission that such service is satisfactory, in which circumstance partial credit may commence at the date of registration as hereinafter set forth.

Subsection (b) would appear to allow credit to be given in cases where the establishment in question does not conform to the standards set forth in subsection (a); but the requirement in subsection (a) that the applicant be employed in Connecticut appears distinct from the requirement that the establishment conform to certain conditions. Even if subsection (b) were interpreted to allow credit to be given for out-of-state employment, it would appear only to authorize such credit from the date of registration in Connecticut. This provision, then, can be read to indicate that credit should not be given for any experience prior to registration in Connecticut.

substantially be altered by a ruling by the Connecticut Supreme Court regarding the duty of the Commission of Opticians to give credit toward the apprenticeship requirements for out-of-state experience.

Abstention under this rationale is not appropriate as to all of plaintiff's claims, but only those the posture of which could be altered by a state court ruling on the issues discussed above. Prime among these, of course, is the direct challenge to the application of the apprenticeship requirements to persons licensed as opticians in other states. It is also possible that a state court ruling on the out-of-state credit issue would affect plaintiff's claim that § 20–146 unreasonably discriminates against opticians as opposed to other licensed dispensers of eyeglasses. This possibility exists because resolution of such a claim might involve a comparison of the burden placed by the statutes on opticians with the analogous burdens placed on ophthalmologists and optometrists. *Compare Tuozzoli v. Killian,* 386 F.Supp. 9 (D.Conn.1974) *with Williamson v. Lee Optical Co., supra.* Plaintiff's claim that the statute unreasonably burdens interstate commerce also falls into this category.[15]

Accordingly, this Court will abstain from determining these claims pending presentation to the Supreme Court of Connecticut of the issue, as outlined above, of the duty of the Commission of Opticians to give credit toward the apprenticeship requirements for out-of-state experience.

Remaining for consideration at this time are plaintiff's claims regarding the four-year apprenticeship requirement *per se* and the written examinations given pursuant to § 20–146.

, Both sides agree that a person who registers for and undertakes his or her entire period of apprenticeship in Connecticut is required to complete four such years before being eligible to take a licensing examination. This situation would not be affected by a state court decision regarding credit for out-of-state experience. Abstention under the *Pullman* doctrine, therefore, is not appropriate as to this issue, and the Court will consider the merits of the motion to dismiss this claim. Similarly, the posture of plaintiff's challenges to the examinations given pursuant to § 20–146 would not be affected by a state court determination of the out-of-state credit issue, and this Court also will consider the merits of the motion to dismiss these claims.

Plaintiff alleges that "[t]he requirement that an applicant be a registered apprentice for a period of not less than four years before that person is entitled to take the examination, is unreasonable and arbitrary as to duration, and has no rational and positive relationship to the qualification or performance of the person seeking or obtaining the license . . . ." As to the examinations, plaintiff alleges, among other things, that "[t]he written examinations that have been administered in the past and which are expected to be administered in the future . . . [h]ave not been job related or otherwise germane to the practical function of Connecticut opticians and have not been validated as to demonstrate a rational and positive relationship to the proper qualifications or performance of the applicant."[16] For the purposes of this mo-

---

**15.** Plaintiff places the out-of-state credit situation in issue by alleging that "[t]he statutory and regulatory restrictions on the licensing of opticians to practice in the State of Connecticut . . . discourag(e) opticians licensed in other jurisdictions from practicing within the State of Connecticut, effecting an unreasonable restraint on trade and interstate commerce . . . ."

**16.** Plaintiff also claims that applicants should not be tested on the production and fabrication of lenses because "approximately 90% of all persons concerned with dispensing eyeglasses to the public do not produce or fabricate the lenses, but purchase same from manufacturers specializing in that function." And plaintiff claims that the area of contact lens fitting and dispensing properly should be "a separate area of testing on an elective basis, for the reason that it places an unreasonable burden on an applicant who may never be required to practice in this area of expertise." While these claims are of doubtful merit, *see Head v. New Mexico Board of Examiners in Optometry,* 374 U.S. 424, 83 S.Ct. 1759, 10 L.Ed.2d 983 (1963);

tion to dismiss, these allegations must be construed in the light most favorable to the plaintiff and must be taken as true. *Jones-Bey v. Caso*, 535 F.2d 1360 (2d Cir. 1976). Any qualification imposed by the state on the practice of opticianry must have a rational connection with an applicant's fitness or capacity to practice opticianry. *Schware v. Board of Bar Examiners*, 353 U.S. 232, 77 S.Ct. 752, 1 L.Ed.2d 796 (1957). If plaintiff's allegations are true, some basis might exist for concluding that the apprenticeship requirement or the requirement of taking such examinations has no rational connection with an applicant's fitness or capacity to practice opticianry. *See Richardson v. Civil Service Comm'n. of State of New York*, 387 F.Supp. 1267, 1276 (S.D.N.Y. 1973). Accordingly, defendants' motion to dismiss are denied with respect to these claims.

*Conclusion*

For all of the reasons stated above, the first count is dismissed, and proceedings on the second count are stayed until the Connecticut Supreme Court has been afforded an opportunity to interpret the challenged provisions of state law. As to the third count: Defendants' motion to dismiss is denied with respect to plaintiff's due process claims concerning the four year apprenticeship requirement *per se*, and the examinations given pursuant to § 20–146. Proceedings on the other claims in the third count are stayed until the Connecticut Supreme Court is afforded an opportunity to interpret the challenged provisions of state law.

If the appropriate questions of state law, however, initially are not presented to the state courts within 180 days those aspects of this action as to which this Court is abstaining shall be dismissed in their entirety. If such presentation is made, this Court shall retain jurisdiction to take such steps as may be necessary for the just disposition of the litigation should a prompt state court determination be prevented.

It is so ordered.

*Williamson v. Lee Optical Co.*, 348 U.S. 483, 75 S.Ct. 461, 99 L.Ed. 563 (1955) plaintiff's general allegation that the examinations have not been

germane to the practice of optometry is sufficient to enable plaintiff's challenge to the examinations to survive a motion to dismiss.