The ALABAMA STATE FEDERATION
OF TEACHERS, etc.; et al., Plaintiffs,

v.

Fob JAMES, etc.; et al., Defendants.

Civ. A. No. 79-6-N.

United States District Court,
M. D. Alabama, N. D.

April 21, 1980.

Robert L. Wiggins, Jr., Wiggins & Quinn, Birmingham, Ala., for plaintiffs.

Charles A. Graddick, Atty. Gen., and Philip C. Davis and Linda C. Breland, Asst. Attys. Gen., State of Ala., Montgomery, Ala., for all defendants except John Landers.

Kenneth L. Thomas, Montgomery, Ala., for John Landers.

## OPINION

GUIN, District Judge.

This cause is submitted for final judgment on the material on file with the Court, and the evidence adduced at trial on March 10, 1980. Plaintiffs brought this cause to have this Court declare unconstitutional certain Alabama statutes relating to the composition of and participation in the Alabama Teachers' Retirement System and the composition of the Alabama Tenure Commission.[1] Upon consideration of the pleadings, evidence, and post-trial briefs of counsel, this Court holds that the statutes in question are constitutional on their face and as applied, and, therefore, Defendants are entitled to judgment in their favor for the reasons stated herein.

## FINDINGS OF FACT

This Court finds that the evidence adduced at trial, as well as the exhibits, affidavits, pleadings and other material on file with this Court reveal the following material facts:

1. There are approximately 40,000 public school teachers, supervisory and support personnel in the State of Alabama.

2. Plaintiff Alabama State Federation of Teachers, AFL–CIO (hereinafter referred to as ASFT), is an unincorporated association formed as a union in 1976. The current number of ASFT members is unknown, although membership in the ASFT is estimated to be between 2,500 and 3,000. Principals and other supervisory school personnel are not allowed to become members of ASFT. Plaintiff Sharpe is the Executive Director of ASFT. Plaintiffs Landerfelt and Gaddy are members and employees of ASFT.

3. All of the Defendants, except Defendant Landers, are being sued individually and in their official capacities as members of either the Board of Control of the Teachers' Retirement System or the State Tenure Commission. In addition to the above, Defendant Hubbert, who is the Executive Secretary of the Alabama Education Association, is also sued as Ex Officio Secretary of the State Tenure Commission. Defendant Landers is being sued in his official capacity as President of the Alabama Education Association (hereinafter referred to as the AEA).

4. The AEA is an organization of public school teachers and education support and

1. See notes 3 and 4 *infra*.

supervisory personnel formed in 1856.[2] The AEA has approximately 35,000 members. Members of the ASFT are not excluded from being members in the AEA, and some ASFT members are, in fact, members of the AEA. The AEA is not informed of which AEA members are also ASFT members. The AEA does not exclude principals and other supervisory personnel from membership.

5. Certain Alabama statutes specify that officers of the AEA shall serve as ex officio members of and/or select members to the Board of Control of the Teachers' Retirement System or the State Tenure Commission.[3] Said statutes do not afford officers of the ASFT the same opportunity to serve as ex officio members of or to appoint members to said boards. Other Alabama statutes provide that administrative personnel employed by the AEA may participate in the Teachers' Retirement System while administrative personnel employed by the ASFT are not thus favored by statute unless they otherwise fall within the definition of "teacher".[4]

6. The Board of Control of the Teachers' Retirement System is a State agency established October 1, 1940, for the purpose of providing retirement allowances and other benefits for all public teachers in the State of Alabama. See, Code of Alabama, § 16–25–2 [1975]. Participants and the State both contribute to the Teachers' Retirement System.

7. The State Tenure Commission is a State agency created in 1959 for the purpose of hearing and determining appeals by tenured teachers of their dismissals from employment by local boards of education. See, Code of Alabama, §§ 16–24–10, –36 [1975].

CONCLUSIONS OF LAW

This Court has jurisdiction based on 28 U.S.C. §§ 1343(3), 2201 and 2202. Plaintiffs contend that officers, employees and members of the ASFT are denied equal protection of the laws guaranteed by the Fourteenth Amendment to the United States Constitution because they are not afforded the same treatment as officers, employees and members of the AEA under the previously-mentioned Alabama statutes. They further contend that, as a result of the implementation of those statutes, they are denied their right *not* to associate with the AEA, thereby abridging their freedom of association guaranteed by the First Amendment of the United States Constitution.

The Defendants contend that the classifications created by the statutes in question are reasonable, rational distinctions that are within the power and discretion of the Alabama Legislature to create. The Defendants further contend that officers and members of the AEA serving as ex officio members or as members of the Teachers' Retirement System and State Tenure Commission are representatives for all public school teachers and education personnel, in-

2. As originally formed, the AEA was a predominantly white organization. A black teachers' organization was formed in the 1890s. That organization merged with the AEA in 1969.

3. The parties have agreed that the following is a correct condensation of the applicable statutes: Code of Alabama, § 16–25–19(b)(4) [1975], provides that the Executive Secretary of the AEA shall serve ex officio as one of the 11 trustees comprising the Board of Control of the Alabama Teachers' Retirement System. Section 16–24–30 provides that the Executive Secretary of the AEA shall serve as ex officio secretary to the State Tenure Commission. Section 16–24–31 provides, *inter alia*, that two certified, tenured classroom teachers be appointed to the State Tenure Commission by the President of the AEA. (Pretrial Order of De-

cember 19, 1974, at 4). As a matter of practice, the President of the AEA has always selected AEA members to fill positions on the State Tenure Commission.

4. The parties have also agreed as follows: Code of Alabama, § 16–25–3 provides, *inter alia*: "[T]he membership of the retirement system shall consist of the following: All persons who shall become teachers after the date of establishment shall become members of the retirement system as a condition of their employment." Section 16–25–1(3) defines "teacher" to include: "Any teacher * * * administrative officer or clerk employed in any public school * * * or any similar employee or officer of the department of education or of the Alabama education association * * *."

cluding members of the ASFT and that, therefore, the Plaintiffs have suffered no damage or deprivation as a result of the implementation of the statutes in question.

I. EQUAL PROTECTION. Plaintiffs claim that, in analyzing Plaintiffs' equal protection challenge to the statutes in question, this Court should strictly scrutinize said statutes because they infringe upon a fundamental right, i. e., the right *not* to associate with the AEA. Defendants, on the other hand, urge this Court to apply the less exacting rational basis analysis to the statutes in question. In *Friedman v. Rogers*, 440 U.S. 1, 99 S.Ct. 887, 59 L.Ed.2d 100 (1979), the Supreme Court applied the rational basis test to a Texas statute which prescribed that two members of the Texas Optometry Board be members of a recognized State optometric association. In that case, the optometrists had divided themselves into two State-wide organizations reflecting their differing approaches to the practice of optometry. Unlike the boards involved in this cause, the Texas Optometry Board had broad powers over the practice of optometry in the State of Texas. *Id.*, at 17–18, 99 S.Ct. at 898. Even so, the Supreme Court stated:

> "When local economic regulation is challenged solely as violating the Equal Protection Clause, this Court consistently defers to legislative determination as to the desirability of particular statutory discriminations. See, e. g., *Lehnhausen v. Lake Shore Auto Parts Co.*, 410 U.S. 356, 93 S.Ct. 1001 [35 L.Ed.2d 351] (1973). Unless a classification trammels fundamental personal rights or is drawn upon inherently suspect distinctions such as race, religion, or alienage, our decisions presume the constitutionality of the stat-

utory discriminations and require only that the classification challenged be rationally related to a legitimate state interest." *Id.*, at 17, 99 S.Ct. at 898, quoting *New Orleans v. Dukes*, 427 U.S. 297, 303, 96 S.Ct. 2513, 2516, 49 L.Ed.2d 511 (1976).

The *Friedman* Court applied the rational basis test to the plaintiff's equal protection claim even though the plaintiff also stated a successful First Amendment claim against the Texas Optometry Board's rule against advertising. *Id.*, at 8–16, 99 S.Ct. at 893–897. The Court unanimously held the statute was not violative of equal protection. However, the *Friedman* decision does not reveal whether the plaintiff also claimed that the Texas statute establishing board membership denied plaintiff's freedom not to associate with the preferred optometric association.

In *Finch v. Mississippi State Medical Association, Inc.*, 585 F.2d 765 (5th Cir. 1978), the plaintiffs sought declaratory and injunctive relief against a Mississippi statute prescribing that eight of 13 members of the State Board of Health be members of the State Medical Association.[5] In that case, the plaintiffs claimed that the statute violated the First Amendment rights of the plaintiffs to free speech and association, as well as denying the plaintiffs equal protection of law. *Id.*, at 771. Despite the inclusion of a First Amendment freedom of association claim by black doctors who were members of a rival medical association, the Fifth Circuit ruled that strict scrutiny of the statute was not required. *Finch v. Mississippi State Medical Association, Inc.*, 594 F.2d 163, 166 (5th Cir. 1979). The court stated that when:

> appoint members to a State board is permissible under Alabama law. See, *In re Opinion of the Justices*, 252 Ala. 559, 42 So.2d 56 (1949). Therefore, abstention not having been raised by the attorneys for the Defendants as an issue, who this Court notes are attorneys employed by the State of Alabama, this Court holds that the delegation of authority set out in the statutes in question here was permissible under Alabama law.

5. The Fifth Circuit originally held that the district court should abstain from deciding the issue until the Mississippi courts decided whether the delegation of authority to the board was proper under State law. After that issue was decided, the Fifth Circuit then reached the merits of the plaintiffs' claims. Abstention in this cause was not requested by either party.

Alabama law appears to be that the delegation to a private association of the power to

"Subjected to the same test [as that enunciated in *Friedman* ], the Mississippi statute is constitutional on its face. The statute is not drawn upon inherently suspect distinctions [the State Medical Association admitted black doctors at the time the suit was filed] and does not trammel fundamental rights. It is rationally related to at least one legitimate purpose, ensuring that the most expert and professionally qualified people will perform the myriad duties required by the Board of Health. We are not permitted to inquire further into the wisdom or desirability of the statutory scheme." *Id.* (footnotes omitted). See, *Pappanastos v. Board of Trustees of the University of Alabama*, Slip Op. 4509 (M.D.Ala. April 8, 1980). Additionally, a Connecticut federal district court judge recently dismissed on motion a claim that a Connecticut statute prescribing that three of five members of the Connecticut Commission of Opticians be licensed as opticians by the State violated equal protection. *Wall & Ochs, Inc. v. Grasso*, 469 F.Supp. 1088, 1091–92 (D.Conn.1979). The plaintiff was a corporation that could not be licensed to practice as an optician.

■ This Court is of the opinion that the above cases establish that only a rational basis test need be applied to the case sub judice and that the Plaintiffs' First Amendment claims should be handled separately. Plaintiffs may not "bootstrap" this Court into strictly scrutinizing the statutes in question for possible equal protection violations by alleging that the same statutes infringe upon their freedom not to associate with the AEA. Plaintiffs have cited no authority for the application of a strict scrutiny standard to statutes which prefer one professional association over another in membership on nonregulatory State boards. In the opinion of this Court, economic discrimination in selecting the membership of nonregulatory boards provides even less support for application of a strict scrutiny test than the discrimination involved in se-

lecting members of those State regulatory boards involved in *Friedman, Finch* and *Wall & Ochs.*

■ In this cause, Plaintiffs have failed to meet their burden of demonstrating that the statutes in question bear no rational relationship to any legitimate State interest and have failed to overcome the presumption that the statutes in question are constitutional. See, *Lehnhausen v. Lake Shore Auto Parts Co.*, 410 U.S. 356, 93 S.Ct. 1001, 35 L.Ed.2d 351 (1973); *Karr v. Schmidt*, 460 F.2d 609 (5th Cir. 1972); *Quality Food Products, Inc. v. Beard*, 286 F.Supp. 351 (M.D.Ala.1968). Therefore, this Court holds that the aforementioned statutes do not violate Plaintiffs' rights to equal protection of the laws.

II. FREEDOM OF ASSOCIATION.
Plaintiffs contend that the statutes in question force them to associate with the AEA and that they have a right not to associate with the AEA. First, Plaintiffs failed to prove at trial one instance where a member of ASFT joined the AEA against his will because of the implementation of the statutes in question. No evidence was introduced that any action taken by the Board of Control of the Teachers' Retirement System or of the State Tenure Commission was prejudicial to or in conflict with the interests of the ASFT or any members of the ASFT. As previously noted, membership in neither the ASFT nor the AEA is a prerequisite to participation in the Teachers' Retirement System. Therefore, this Court will infer no reason for a member of the ASFT to join the AEA against his will. While Plaintiffs may have alleged sufficient injury in their complaint to satisfy traditional standing requirements,[6] this Court is of the opinion that the Plaintiffs have simply failed to prove such injury or prejudice at trial.

■ Second, even assuming that some ASFT members have joined AEA against their will, this Court is of the opinion that the First Amendment freedom of associa-

---

6. See, *Warth v. Seldin*, 422 U.S. 490, 511, 95 S.Ct. 2197, 2211, 45 L.Ed.2d 343 (1975); *Wall & Ochs, supra*, at 1091.

tion is not so broad as to encompass the Plaintiffs' claims that the statutes in question deny them the "right" *not* to associate with the AEA.

"The First Amendment protects the right of an individual to speak freely, to advocate ideas, to associate with others, and to petition his government for redress of grievance. And it protects the right of associations to engage in advocacy on behalf of their members * * *. But the First Amendment does not impose any affirmative obligation on the government to listen, to respond or, * * * to recognize the association and bargain with it." *Smith v. Arkansas State Highway Employees Local 1315*, 441 U.S. 463, 464–65, 99 S.Ct. 1826, 1827–1828, 60 L.Ed.2d 360 (1979).

The fact that the statutes in question operate to reduce the effectiveness of the ASFT does not constitute the type of impairment of First Amendment freedoms which the Constitution prohibits. *Id.*, at 466, 99 S.Ct., at 1828. In the absence of a showing of an impairment of any of the Plaintiffs' rights to associate with the ASFT, or of the ASFT's rights to advocate any ideas, the effect on the Plaintiffs' freedom of association can, at most, only be incidental to the otherwise proper exercise of State discretion over the boards in question. Cf. *United States v. Cooper*, 606 F.2d 96, 98 (5th Cir. 1979). The Plaintiffs have cited this Court no decision that ruled a statute creating otherwise permissible classifications between private associations unconstitutional on the ground that the statute violated rights of members of the nonpreferred association *not* to associate with the preferred association. This Court will not, under the circumstances of this cause, enforce the First Amendment freedom of association in the negative in the absence of controlling precedent to do so. Therefore, this Court holds that the statutes in question do not violate any of the Plaintiffs' First Amendment rights.