508 F.2d 1317
 GAJON BAR & GRILL, INC., and James Francione, Plaintiffs-Appellees,
v.
Eugene KELLY, Individually and in his capacity as Police
Commissioner of the County of Suffolk, State of New York,
Defendant, and Paul J. Fitzpatrick, Individually and as
Supervisor of the Town of Smithtown, and Vincent J.
Trimarco, Individually and as Town Attorney of the Town of
Smithtown, Defendants-Appellants, and Robert Hoss,
Individually and as a member of the Suffolk County Police
Department, and Emil Ortolani, Individually and as a member
of the Suffolk Police Department, Defendants.
 No. 312, Docket 74-1791.
 United States Court of Appeals, Second Circuit.
 Argued Nov. 4, 1974.
Decided Dec. 5, 1974.
 
 Howard E. Pachman, Commack, N.Y., for defendants-appellants.
 Walter G. Steindler, Commack, N.Y. (Belli, Sarisohn, Creditor, Carner, Thierman & Steindler, Commack N.Y., on the brief), for plaintiffs-appellees.
 Before KAUFMAN, Chief Judge, and ANDERSON and MULLIGAN, Circuit judges.
 ROBERT P. ANDERSON, Circuit Judge:
 
 
 1
 Smithtown, a municipality located in Suffolk County, New York, promulgated an ordinance (Local Law 1-1973) making it unlawful for any female to appear in a live public show '. . . in such a manner that the portion of her breast below the top of the areola is not covered with a fully opaque covering.'[1] Any person who aids and abets a violation of the local law also is subject to criminal sanctions.
 
 
 2
 Local police, on two separate occasions on March 16, 1974, arrested 'topless' dancers who were performing at a nightspot owned and operated by appellee Gajon Bar & Grill, Inc. (Gajon). The manager of the establishment, James Francione, also an appellee herein, was twice arrested and charged, as were the dancers, with violating Local Law 1-1973.[2] The cases were set down for trial in Suffolk County District Court.[3]
 
 
 3
 The Town Supervisor enthusiastically greeted news of these arrests and vowed in the local press that Smithtown would not become 'the topless capital of Suffolk County,' for which reason he pledged continued enforcement of Local Law 1-1973.[4]
 
 
 4
 Although it had not been indicted for violating the ordinance, Gajon has ceased to provide topless entertainment at its Smithtown establishment because of the threat of future prosecution. Business has plummeted, allegedly as a result, and Gajon contends that insolvency is imminent.
 
 
 5
 Francione, subsequent to his arrest but prior to trial, commenced an action under 42 U.S.C. 1983 in the United States District Court for the Eastern District of New York, in which he was joined as co-plaintiff by Gajon. Plaintiffs sought a declaratory judgment that Local Law 1-1973 violates their rights of freedom of speech guaranteed by the First and Fourteenth Amendments to the United States Constitution. They also requested permanent injunctions prohibiting local officials[5] from enforcing the ordinance against Gajon and from continuing the prosecution of Francione.
 
 
 6
 The District Court entered a declaratory judgment declaring that the local law was unconstitutional on its face and granted the injunctions. We hold that this was error under the circumstances of this case and we, therefore, do not pass on the merits of the constitutional claim.
 
 
 7
 Congress long ago promulgated a statute designed to limit federal court interference in state judicial proceedings.[6] The principle of avoiding unnecessary friction between the state and federal jurisdictions still prevails, and a statute implementing the policy is still operative. Its present form, 28 U.S.C. 2283, provides: 'A court of the United States may not grant an injunction to stay proceedings in a State court . . .' This proscription, otherwise absolute, has been circumscribed over the years by few statutory exceptions.[7] One such exception exists for situations in which Congress has 'expressly authorized' federal injunctive relief. An example is a case like the present one, which is brought under 42 U.S.C. 1983 to safeguard federal rights against deprivation under color of state law. Mitchum v. Foster, 407 U.S. 225, 92 S.Ct. 2151, 32 L.Ed.2d 705 (1972); Boraas v. Village of Belle Terre, 476 F.2d 806, 811 (2 Cir. 1973), rev'd on other grounds, 416 U.S. 1, 94 S.Ct. 1536, 39 L.Ed.2d 797 (1974). The use of such power calls for consideration of the principles of equity, comity and Federalism, upon which the anti-injunction statute is based, which require that this power be exercised sparingly, which is to say only where it is 'absolutely necessary' to stave off the threat of 'irreparable . . . great and immediate injury' to the exercise of constitutional rights. Mitchum v. Foster, supra, 407 U.S. at 243, 92 S.Ct. 2151; see, Dombrowski v. Pfister, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965); Ex Parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908); Fenner v. Boykin, 271 U.S. 240, 46 S.Ct. 492, 70 L.Ed. 927 (1926); Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971).
 
 
 8
 This policy is considered so important that, when state criminal proceedings are pending against the federal plaintiff, it has been held to limit the availability of declaratory relief (which is not mentioned in the anti-injunction statute) to situations where there is this same grave threat of irreparable injury to the exercise of constitutional rights. Samuels v. Mackell, 401 U.S. 66, 91 S.Ct. 764, 27 L.Ed.2d 688 (1971). The District Court may, however, enter a declaratory judgment on the constitutional validity of a state statute at the behest of a party who, although affected by the operation of the statute, has not been indicted for violating it; whether it also can issue an injunction under such circumstances has yet to be resolved. See, Steffel v. Thompson, 415 U.S. 452, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974); Roe v. Wade, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973).
 
 Francione:
 
 9
 The Supreme Court, in a series of recent cases, has clarified the meaning of 'irreparable . . . great and immediate' injury to the free exercise of constitutional rights. In Younger v. Harris, supra, the Court held that it was improper for a federal court to enjoin a pending state prosecution merely because the federal plaintiff had been indicted under a statute which, on its face, violated the First and Fourteenth Amendments. The Court conceded that a prosecution under an unconstitutional statute 'chills' the exercise of rights, and that this was the type of 'injury' which the federal courts were primarily charged with preventing. Such injury, however, even though 'great and immediate,' was not 'irreparable,' in the Court's opinion, when it can be eliminated by defense against the state prosecution. 401 U.S. at 46, 91 S.Ct. 746. And, it could be eliminated in Younger because the prosecution had been brought in good faith and not, as in Dombrowski v. Pfister, supra, for the purpose of harassment.
 
 
 10
 The prosecution in the Dombrowski case threatende to use evidence, previously held to have been seized illegally, to obtain an indictment for violation of a statute whose constitutional validity was, at best, suspect. Because no other evidence was available, there was no hope for success on the merits. The Supreme Court sanctioned the District Court's intervention under such circumstances. As the Court made clear in Younger, such intervention was required to prevent the 'irreparable' injury which would result from the continued existence of the state statute the constitutional validity of which, because of the evidentiary and other 'collateral' defects in the prosecution, would not, otherwise, be adjudicated.
 
 
 11
 Federal injunctive relief, in short, is warranted where the injury to the free exercise of constitutional rights is '(greater than) that associated with the defense of a single prosecution brought in good faith . . .' under a statute of doubtful constitutional validity. Younger v. Harris, supra, 401 U.S. at 48, 91 S.Ct. at 752. Such is the case when there are defects in the prosecution, other than the alleged unconstitutionality of the statute, which are sufficiently clear to warrant the inference of bad faith prosecution. The injury is then 'irreparable' because the state court could not reach the merits of federal claim.
 
 
 12
 In Samuels v. Mackell, supra, the Court held that federal declaratory relief also may not be granted where a state prosecution is pending and the injury to the free exercise of the federal plaintiff's constitutional rights is not 'irreparable,' as defined in Younger.
 
 
 13
 It was contended, and the District Court so held, that, because of the following circumstances, Francione was entitled to declaratory and injunctive relief: (1) The repeated arrests of appellee Francione and others under the Smithtown ordinance, coupled with the Town Supervisor's 'demogogic statements' of his intent to eliminate topless dancing in the locality, evidence harassment and bad faith prosecution. (2) A United States District Court, prior to the commencement of criminal proceedings against Francione, had declared a similar ordinance banning topless dancing unconstitutional. The present prosecution, and threats of prosecution, therefore, constitute harassment because the State could not hope to achieve success on the merits.
 
 
 14
 Although, concededly, the Smithtown officials vigorously enforced Local Law 1-1973, Dombrowski does not sanction federal intervention every time the state vigorously enforces a statute of doubtful constitutional validity. And, the circumstances of this case do not reveal that type of prosecutorial bad faith which results in irreparable injury above and beyond that associated with the defense of a single prosecution. There is no reason to believe that the New York courts will not reach the merits of appellee's federal claim; Younger and Samuels v. Mackell, therefore, require reversal of the District Court's injunctive and declaratory interference in the pending prosecution of Francione.
 
 
 15
 Although a United States District Court had granted a preliminary injunction in Salem Inn, Inc. v. Frank, 364 F.Supp. 478 (E.D.N.Y.1973), aff'd 501 F.2d 18 (2 Cir. 1974), on the ground that a similar ordinance was probably constitutionally invalid, New York, State courts twice have upheld the constitutionality of similar local laws. People v. Moreira, 70 Misc.2d 68, 333 N.Y.S.2d 215 (1972); Brandon Shores, Inc. v. Village of Greenwood Lake, 68 Misc.2d 343, 325 N.Y.S.2d 957 (1971). In the face of such conflicting precedent, the prosecution in this case does not represent the same empty threat which was posed by the prosecution in Dombrowski. And, even if Local Law 1-1973 is unconstitutional on its face, that fact alone, as evidenced by Younger, does not justify federal intervention. The unambiguous defect in the prosecution's case must be on a collateral issue, so as to preclude the possibility of an adjudication of the constitutional issue on its merits. Appellees allege no such collateral defect and the record reveals none. The injury to Francione's free exercise of constitutional rights is not irreparable. We, therefore, reverse the declaratory judgment and vacate the injunction which the District Court granted.
 
 Gajon:
 
 16
 Having determined that federal intervention in the pending state prosecution of Francione was improper, the question now arises whether Gajon was, nevertheless, entitled to declaratory and injunctive relief because it had not been subjected to state prosecution and no such case was pending.
 
 
 17
 The Supreme Court, in Steffel v. Thompson, supra, held that a federal court may enter a declaratory judgment when the state merely has threatened the plaintiff with prosecution, even if formal proceedings have been instituted against a third party under the contested statute. This court has sanctioned the grant of an injunction in favor of a party who was not indicted until the person prosecuted and his co-plaintiffs, who were not prosecuted, had already filed suit in the District Court. Salem Inn, Inc. v. Frank, supra, Gajon contends that, even if, as we have held, the court below erred in extending relief to its co-plaintiff, these cases establish that the principles of equity, comity and Federalism, upon which we based that holding, do not apply to it. We disagree.
 
 
 18
 Younger v. Harris, supra, made clear that the longstanding rule proscribing federal interference in state court proceedings applies whether the constitutional right at issue in the suit for an injunction or a declaratory judgment can be defended adequately in the criminal prosecution. The District Court may intervene only 'when absolutely necessary for protection of constitutional rights.' Id., at 45, 91 S.Ct. at 751, quoting from Fenner v. Boykin, supra, 271 U.S. at 243-244, 46 S.Ct. 492. The rule and its exception are based on the traditional notion that equity does not act when there is an adequate remedy at law. Any interference, moreover, would reflect negatively upon the ability of state courts, which are charged with enforcing federal constitutional rights, to carry out their function and, hence, would violate the principles of comity and Federalism.
 
 
 19
 The plaintiffs in both Steffel v. Thompson and Salem Inn, Inc. v. Frank claimed injury to the free exercise of their own constitutional rights. Because no state criminal proceeding was pending in Steffel v. Thompson, intervention not only was 'absolutely necessary' to protect constitutional rights, but '. . . (could not) in that circumstance, be interpreted as reflecting negatively upon the state court's ability to enforce constitutional principles.' Id. at 462, 94 S.Ct. at 1217. Although a state proceeding was brought against one of the federal plaintiffs after suit had been filed in the District Court in Salem Inn, Inc. v. Frank, the claim advanced by that party was identical to that of his co-plaintiffs, against whom no prosecution was pending and for whose protection, therefore, federal intervention was absolutely necessary. This court held that it would be inequitable to grant relief to one set of plaintiffs and not to the other. Moreover, to refrain from acting would open the possibility of conflicting judgments and, therefore, contribute to federal-state conflict, which the holding in Younger v. Harris was particularly designed to avoid. Finally, it was felt that granting relief to all the plaintiffs would result in the conservation of judicial energy.
 
 
 20
 Gajon sought, and was granted, equitable relief on the ground that the Smithtown ordinance chilled the exercise of its constitutional rights, to its substantial financial detriment. Gajon, however, is a corporation and the First and Fourteenth Amendments do not guarantee freedom of speech of corporations. Hague v. C.I.O., 307 U.S. 496, 514, 59 S.Ct. 954, 83 L.Ed. 1423 (1939).[8]
 
 
 21
 Although Gajon did have standing to defend the First Amendment rights of its employees and patrons because of the adverse economic effect which it suffers as a result of the ban on topless dancing,[9] the issue is whether the District Court should have granted it equitable relief. We hold that, under the circumstances of this case, it should not have acted and, accordingly, we reverse the declaratory judgment and vacate the injunction entered by the District Court.
 
 
 22
 The right which Gajon asserted in the federal suit was not its own but in part, at least, that of its manager, Francione, who, we have held, has the opportunity to defend it in the pending state proceeding. Any other person, for example a patron, whose exercise of First Amendment right to free speech is chilled by the Smithtown ordinance, and who has not been indicted, can seek equitable relief on his own. Federal intervention in favor of Gajon, in short, was not absolutely necessary for the protection of constitutional rights belonging to these others. Moreover, none of the factors of Salem, Inn, Inc. v. Frank, supra, is here present. There we sanctioned the grant of relief to the plaintiff against whom a state prosecution was pending because we had affirmed the intervention in favor of his co-plaintiffs. Considerations of judicial economy, as well as equity, and the desire to avoid conflicting judgments militated in favor of that result. To extend declaratory and injunctive relief to Gajon, after we have held that the state has the right to proceed with the prosecution of Francione without federal interference, would result in none of the benefits which induced our holding in that case.
 
 
 23
 The principles of the Younger line of cases are applicable to Gajon, and, because no special circumstances are present, the declaratory judgment and the order for injunctive relief granted by the district court are reversed.[10]
 
 IRVING R. KAUFMAN, Chief Judge (concurring):
 
 24
 I concur because I understand my brothers to hold that Younger may be applied against a corporation asserting derivatively a first amendment right which may otherwise be adequately protected, both in federal court and in a pending state criminal prosecution. I would hesitate to agree, however, that the principle Younger enunciates extends to cases where an institutional plaintiff exists primarily for the expression and defense of the right sought to be protected, see, e.g., NAACP v. Button, 371 U.S. 415, 428, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963); New York Times Co. v. United States, 403 U.S. 713, 91 S.Ct. 2140, 29 L.Ed.2d 822 (1971); Sierra Club v. Morton, 405 U.S. 727, 739, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972). Nor do I think that such a holding would be proper where there was a clear showing that no individual could adequately safeguard a widely held interest, either because a state prosecution portended indefinite delay,[1] or because no one had a sufficient personal stake to warrant initiation of a federal action.
 
 
 
 [1]
 The full text of the ordinance, which was adopted by the Smithtown Town Board in January, 1973 under the authority of 245.01 and 245.02 of the New York Penal Law (McKinney's Consol.Laws, c. 40, 1967), provides:
 'It shall be unlawful for any female to appear in public in such a manner that the portion of her breast below the top of the areola is not covered with a fully opaque covering. Any person shall be guilty of violating this section who, in any capacity, knowingly directs, gives, manages, participates in, prepares or presents, or who employs others so to do any live public show in which a female appears clothed or costumed in such a manner that the portion of her breast below the top of the areola is not covered with a fully opaque covering.'
 Any person found guilty of violating this local law is subject to imprisonment not to exceed fifteen (15) days, or a fine to be fixed by the court not to exceed two hundred fifty dollars ($250), or both. Ch. 15, 3, Smithtown Entertainment Regulations.
 
 
 [2]
 Smithtown had adopted an ordinance in 1970 which was substantially similar to Local Law 1-1973. Appellee Francione had been arrested at the same premises on two occasions for violations of that 1970 ordinance. The charges against Francione later were dismissed, however, on the ground that the Town Board had adopted the provision prior to the effective date of the New York State enabling statute
 
 
 [3]
 The record in this case does not indicate whether the trials in the cases against the dancers have been held, or whether the charges against them are still pending
 
 
 [4]
 Paul J. Fitzpatrick, Supervisor of the Town of Smithtown, was quoted in the Long Island Press of March 20, 1974, as having stated, 'We have no interest in being the topless capital of the County, State or the County . . .' and was similarly quoted in News-day of the same date
 The Smithtown News, March 21, 1974, reports the comments of the Supervisor with reference to the incidents as follows:
 'The arrest was obviously an attempt to publicize the lounge and to embarrass those who are responsible for upholding the Town's Laws. The Supervisor went on to say that he was pleased by the arrests and the fact that (the local police) had moved . . . 'with dispatch.' 'We are not interested in this type of entertainment in Smithtown; and if the proprietor whishes to provide it, then he should go someplace else and set up shop,' said Fitzpatrick.'
 
 
 [5]
 The defendants in the action below were Eugene Kelly, Suffolk County Police Commissioner; Paul J. Fitzpatrick and Vincent J. Trimarco, Town Supervisor and Town Attorney, respectively; Robert Hoss and Emil Ortolani, members of the Suffolk County Police Department. Fitzpatrick and Trimarco are appellants herein
 
 
 [6]
 The Act, adopted in 1793, unconditionally provided:
 'Nor shall a writ of injunction be granted to stay proceedings in any court of a state . . .' 1 State. 335, c. 22, 5.
 
 
 [7]
 Three exceptions are provided in 28 U.S.C. 2283:
 (1) '(where) expressly authorized by Act of Congress;' (2) 'where necessary in aid of (the) jurisdiction (of the federal court);' and (3) where necessary 'to protect or effectuate (the) judgments (of the federal court.)
 
 
 [8]
 In New York Times Co. v. United States, 403 U.S. 713, 91 S.Ct. 2140, 29 L.Ed.2d 822 (1971), the newspaper made a derivative claim under the First Amendment, which it denominated as the public 'right to know.' It is clear that the Times was not asserting that the right was its own, but that, by virtue of its journalistic 'scoop,' it was trustee of that right. See, Id., at 749, 91 S.Ct. 2140 (Burger, Chief Justice, dissenting)
 
 
 [9]
 Although the general rule is 'that a litigant may only assert his own constitutional rights or immunities,' United States v. Raines, 362 U.S. 17, 22, 80 S.Ct. 519, 4 L.Ed.2d 524 (1960), a party facing economic injury as a result of the deprivation of the rights of others has standing to raise the constitutional issue. Pierce v. Society of Sisters, 268 U.S. 510, 535, 45 S.Ct. 571, 69 L.Ed. 1070 (1925); Barrows v. Jackson, 346 U.S. 249, 73 S.Ct. 1031, 97 L.Ed. 1586 (1953)
 
 
 [10]
 The fact that Gajon faces continued economic injury does not alter this result. In the delicate area of federal-state relations, District Courts may act, even if equitable relief would otherwise be appropriate, only when absolutely necessary to protect constitutional rights
 Moreover, we doubt that Gajon would be entitled to injunctive relief in any case. Unlike Salem Inn, Inc. v. Frank, supra, where the federal plaintiff was actually indicted after he filed his suit for declaratory and injunctive relief, the plaintiff in this case was merely being threatened with prosecution. And, because Gajon had ceased to provide topless, entertainment, it was being threatened with prosecution for its past conduct.
 In those cases where an injunction has been sought to restrain and imminent, but not yet pending, prosecution for past conduct, sufficient injury has not been found to warrant injunctive relief. See, Bral v. Missouri Pacific R. Co., 312 U.S. 45, 61 S.Ct. 418, 85 L.Ed. 577 (1941); Spielman Motor Sales Co. v. Dodge, 295 U.S. 89, 55 S.Ct. 678, 79 L.Ed. 1322 (1935); Fenner v. Boykin, supra. Although there is some question whether a showing of irreparable injury has been made where an individual demonstrates that he must forego constitutionally protected activity in order to avoid prosecution, Gajon is not being 'chilled' in the exercise of its own constitutional right by the threat of future arrests. Compare Dombrowski v. Pfister, supra; Hygrade Provision Co. v. Sherman, 266 U.S. 497, 45 S.Ct. 141, 69 L.Ed. 402 (1925); and Terrace v. Thompson, 263 U.S. 197, 214, 216, 44 S.Ct. 15, 68 L.Ed. 255 (1923); with Douglass v. City of Jeannette, 319 U.S. 157, 63 S.Ct. 877, 87 L.Ed. 1324 (1943).
 
 
 [1]
 At the hearing before Judge Bruchhausen on April 4, 1974, counsel for Fitzpatrick and Trimarco indicated that state proceedings against Francione were to take place on April 25 and May 2, 1974. Because of the action in the federal district court, those trials never took place