Gary Lee ERRET, Todd Huey, Thomas Coon, David Michael Damico and McCreary Tire & Rubber Co., Inc., Plaintiffs,

v.

COMMONWEALTH OF PENNSYLVANIA, Pennsylvania State Police; Jay Cochran, Jr., Commissioner Pennsylvania State Police; Richard Weatherbee, Deputy Commissioner, Pennsylvania State Police; Capt. William Mericle, Commander–Troop A, Pennsylvania State Police; Lt. James Drause, Station Commander, Indiana Substation, Pennsylvania State Police; Sgt. Sidney Simon, Pennsylvania State Police; Trooper Richard Douthit, Pennsylvania State Police; Trooper John R. Ludwig, Jr., Pennsylvania State Police; Trooper Frank Adamczyk, Pennsylvania State Police; Trooper Brigit Pedersen, Pennsylvania State Police; Trooper Foringer, Pennsylvania State Police; Borough of Indiana, Pennsylvania; Charles McAdoo, Chief of Police, Borough of Indiana, Pennsylvania; Sgt. Anthony Antolik, Borough of Indiana Police; Patrolman Charles R. Kelly, Borough of Indiana Police; Patrolman Russell States, Borough of Indiana Police Defendants.

Civ. A. No. 87–2743.

United States District Court, W.D. Pennsylvania.

March 29, 1989.

John W. Murtagh, Jr., Wexford, Pa., for plaintiffs.

Larry P. Gaitens, Pittsburgh, Pa., for Indiana Borough defendants.

Thomas F. Halloran, Office of Atty. Gen., Pittsburgh, Pa., for Com. defendants.

## MEMORANDUM AND ORDER

SMITH, District Judge.

Currently before the court in this civil rights action are summary judgment motions by the Commonwealth, Pennsylvania State Police (PSP), and several Pennsylvania State Police officers sued in their official and individual capacities, and by Indiana Borough and several Indiana Borough police officers sued in their official and individual capacities.[1] For the reasons stated herein, their motions will be granted.

The material facts are not in dispute. See Statement of Material Facts not in Dispute, filed February 22, 1989 (defendants); Plaintiffs' Statement of Genuine Issues of Fact, received March 14, 1989 (plaintiffs). The parties agree that:

1. A work stoppage at plaintiff McCreary Tire & Rubber Company, Inc., a manufacturer in the Borough of Indiana, Pennsylvania, began on March 3, 1986.

---

1. This matter has been before the Court on prior motions to dismiss. By an Order of July 11, 1988, Judge Bloch dismissed Counts One and Two of plaintiffs' Amended Complaint, which alleged violations of 42 U.S.C. § 1985(2) and (3), and 42 U.S.C. § 1986, and denied a motion to dismiss Count Three, which alleged violations of 42 U.S.C. § 1983. By Order of November 21, 1988, and December 5, 1988, this judge denied motions to dismiss by the Pennsylvania State Police. The Order of December 5, 1988, is the subject of an interlocutory appeal currently pending in the Third Circuit at No. 88–3851 (Notice of Appeal filed December 16, 1988).

2. From March 3, 1986, through June 9, 1986, there were numerous incidents of violence and property damage at McCreary Tire. Plaintiffs further assert that there were ninety-five (95) separate acts of violence or threats to the nonstriking employees of McCreary Tire, and none towards the striking employees.

3. McCreary Tire as early as February 27, 1986, had expressed its concern about possible strike-related violence to the Pennsylvania State Police. By letter, McCreary Tire's counsel, Albert C. Gaudio, Esquire, requested the PSP to "take all reasonable steps as law enforcement officers" to safeguard employees reporting to work.

4. On March 26, 1986, Don D. Mateer, President of McCreary Tire, wrote to then-Governor (now United States Attorney General) Thornburgh requesting his assistance in investigating the incidents surrounding the strike, which included threats of bodily harm and property damage. The Governor assigned a labor mediator to assist in negotiations between the two sides.

5. On April 1, 1986, an explosive device damaged a door to a water pumping station at McCreary Tire, and on April 27, 1986, shots were fired at the plant's electrical transformers, damaging one of them.[2]

6. On June 8, 1986,[3] a homemade bomb killed William Anderson, a striking employee. From the evidence, it appears that Anderson may have been preparing to place two bombs near the plant's electrical transformers. Found with Anderson's body was a .357 magnum revolver.

7. On June 9, 1986, Sheriff Gondal of Indiana County requested assistance from the Pennsylvania State Police, which assistance was immediately authorized by Commissioner Cochran of the PSP, through Major Hankinson.

8. On June 9, 1986,[4] a striking worker was seriously injured when a nonstriking employee ran him down with his van. Later that day, police officers confiscated baseball bats and an ax from the vehicles of picketers. The driver of the van was prosecuted for aggravated assault.

It further appears that the officers of the PSP believed it likely that as a result of the death of Anderson there would be a demonstration by union members supporting the striking employees, and decided to deploy officers in force, equipped with riot gear. Plaintiffs' Statement, paragraph 7. On June 10, 11, and 12, 1986, the Pennsylvania State Police and members of the Indiana Borough Police, under the direction of defendants Simon, Krause and Mericle of the PSP, deployed officers near the gates of the McCreary Tire plant, in what plaintiffs describe as a "gauntlet". Plaintiffs' Statement, paragraphs 15–18, 25. Defendant Simon instructed his officers to observe passing traffic for anything that was or could be a prohibited offensive weapon. *Id.*, paragraph 17.

On June 12, 1986, Sergeant Antolik and Patrolman Kelly of the Indiana Borough Police Department stopped plaintiff Gary Lee Erret's vehicle as Erret was proceeding on Washington Street past the double line of police officers. Antolik and Kelly stopped the car and removed a wooden indian club, two socks containing glass bottles, and a metal file from Erret's vehicle. Trooper Douthit, on duty on Wine Street, arrived, advised Erret of his miranda rights, and obtained an admission that the items removed from the vehicle were Erret's. The items were confiscated, and after a delay of approximately 45 minutes, Erret and his two passengers were allowed to proceed to work. Trooper Douthit was the officer who filed prohibited offensive weapons charges against Erret. The case was held for court by a district justice, but the charges were dismissed after the evi-

---

2. While plaintiffs do not stipulate to this assertion by defendants, they do not contest it in any way. See *ante*, at 2.

3. Defendants mistakenly assert that this took place on June 9, 1986. See, however, the report by Trooper Allen G. Evans, attached to Defendants' Statement of Material Facts.

4. Defendants mistakenly assert that this took place June 10, 1986. See, however, the report by Trooper Richard Douthit, attached to Defendants' Statement of Material Facts; see also Indiana Gazette, June 10, 1986, page 1, Exhibit "7" to Defendants' Statement of Material Facts.

dence seized was suppressed by the Indiana County Court of Common Pleas, on the basis that the search was illegal. (Deposition of Trooper Douthit, 13–16; *Id.,* Initial Crime Report A3–455080 (Douthit); Deposition of Gary Lee Erret, 6–12, 16).

On June 11 or 12, 1986, Trooper Birgit [5] Pedersen stopped plaintiff Todd Huey for a motor vehicle equipment violation, at Washington and Wine Streets. The right front headlight was burned out. Trooper Pedersen noticed four baseball bats on the floor of the rear seat. She seized the bats, and later filed prohibited offensive weapons charges against Huey. The charges were dismissed at the magistrate's level because the bats were legally held to serve a common lawful purpose.[6] Huey and his three passengers were delayed approximately 45 minutes. (Deposition of Todd Huey, 8–12, 17; Initial Crime Report A3–445067 (Pedersen)). Pedersen places this incident on June 11, 1986; Huey, on June 12, 1986.

On June 12, 1986, Trooper Frank Adamczyk was on duty at Washington and 13th Street. Plaintiff Thomas Coon was in his vehicle proceeding along the line of officers toward the Washington Street entrance to the McCreary Tire plant when he was waved over, and Trooper Adamczyk removed a baseball bat from the rear of his car. Coon later received a citation for possessing a prohibited offensive weapon, but the charges were dropped at the district justice's office. (Deposition of Thomas Coon, 8–22; Initial Crime Report A3–455271 (Adamczyk); Deposition of Trooper Adamczyk, 15–18) Coon recalls the charges being dropped without a hearing. Adamczyk recalls that there was a hearing but that the charges were dropped on motion by Coon's attorney.

On June 12, 1986, plaintiff David Michael Damico was proceeding in his car toward the Washington Street entrance to the McCreary Tire plant when he was stopped by Trooper Foringer, on strike duty at Washington and Wine Streets. When the vehicle was pulled over, Trooper Foringer and Trooper John R. Ludwig removed a sawed off baseball bat on the front passenger seat. Damico opened the vehicle trunk at the trooper's request. A slim jim, a device slipped between a window and door frame in order to unlock a motor vehicle door lock, was confiscated from the trunk, together with the sawed off baseball bat and a golf club in Damico's car. Damico denied knowing who owned the baseball bat or golf club, and how they got into his car, but admitted that the slim jim was his. After a delay of approximately one hour, Damico and his three passengers proceeded to work. Trooper Ludwig filed prohibited offensive weapons charges against Damico, which were held for court by a district justice. The charges were dropped when the evidence seized was suppressed by the Indiana County Court of Common Pleas. (Deposition of Trooper Ludwig, 11–17; Deposition of David M. Damico, 8–15.)

The four individual plaintiffs were obligated to take some hours' time off from their employment to attend court proceedings at the district justice or common pleas court level. The plaintiffs were not sure whether they lost any pay as a result of this or as a result of their brief detention by the troopers outside the McCreary Tire plant.

*Commonwealth Defendants*

Some claims can be dismissed without extensive discussion. Although we previously denied the motion to dismiss the claims against the Pennsylvania State Police and the state police defendants in their official capacities on the basis of the then existing record, the record as it now exists submitted for summary judgment, makes it clear that no injunctive or equitable relief is requested or appropriate. The Eleventh Amendment, therefore, divests us of subject matter jurisdiction over those defendants. *Helfrich v. Commonwealth, Department of Military Affairs,* 660 F.2d 88

---

**5.** Defendants and plaintiffs refer to Trooper Pedersen as "Brigit." She spells her name "Birgit".

**6.** 18 Pa.C.S. § 908 defines "offensive weapon" to include an "implement for the infliction of serious bodily injury which serves no common lawful purpose."

(3d Cir.1981). Plaintiff's argument that we retain jurisdiction for purposes of attorney's fees awards under 42 U.S.C. § 1988, is an incorrect reading of *Helfrich,* which suggested that attorneys fees could be awarded *if* injunctive relief were appropriate. *Id.,* 660 F.2d at 90. Since in the instant case, plaintiffs cannot be prevailing parties against the Commonwealth, the Commonwealth cannot be forced to pay attorneys fees. *Kentucky v. Graham,* 473 U.S. 159, 168, 105 S.Ct. 3099, 3106, 87 L.Ed. 2d 114 (1985).

## McCreary Tire

■ It has been long-settled that a corporation is a "person" entitled to sue under Section 1983 for violations of federal constitutional and statutory rights. Corporations have the rights of a "person" within the meaning of the equal protection and due process clauses of the fourteenth amendment, for instance, but do not have the rights of "citizens" within the meaning of the privileges and immunities clause of that amendment or of Article IV. *See Grosjean v. American Press Co.,* 297 U.S. 233, 56 S.Ct. 444, 80 L.Ed. 660 (1936) (person); cf. *Hague v. C.I.O.,* 307 U.S. 496, 59 S.Ct. 954, 83 L.Ed. 1423 (1939) (citizen).

McCreary Tire alleged that the defendants conspired as a result of "antimanufacturer bias" to weaken its position in the labor dispute, and that as a result of the defendants' actions it suffered economic harm due to the loss of its employees' services. Complaint, paragraphs 29, 33; Amended Complaint, paragraphs 29, 33.

Before addressing this claim on its merits, we note that defendants have challenged McCreary Tire's standing to bring an action. Defendants assert that McCreary Tire cannot sue them for alleged illegal searches and seizures of McCreary Tire employees. We believe that this argument, and McCreary Tire's response, citing cases such as *Gajon Bar & Grill, Inc. v. Kelly,* 508 F.2d 1317, 1322 (2d Cir.1974) are largely beside the point. McCreary Tire here does not seek representational standing such as that contemplated in *Singleton v. Wulff,* 428 U.S. 106, 113–18, 96 S.Ct.

2868, 2873–76, 49 L.Ed.2d 826 (1976), (Opinion of Blackmun, J.) and we therefore have no occasion to rule on that issue. McCreary Tire seeks redress for the losses to *it* caused by the stops and searches of its employees.

■ Although McCreary Tire has standing to bring a complaint, it fails to state a cognizable cause of action. McCreary Tire asserts three separate rationales for recovery, and each is deficient. First, McCreary Tire asserts that due to "antimanufacturer bias" the defendant police officers conspired to weaken its position in the labor dispute, and carried this out by stopping and searching plaintiffs Coon, Erret, Damico and Huey. This resulted in a loss of time from these employees. McCreary Tire also asserts that other employees resigned due to these occurrences, leading to further economic harm. We assume that McCreary Tire alleges that this is a denial of equal protection of the law.

McCreary Tire has, however, provided no evidence whatsoever in support of the naked allegation in the amended complaint that the actions by the defendants were motivated by antimanufacturer bias. Section 1983 protects a plaintiff only from intentional deprivations of equal protection. If the actions of the defendants in stopping and searching Coon, Erret, Damico and Huey merely had the effect of weakening McCreary Tire's bargaining position, an assertion which is not supported by the evidence before us, that effect does not create any cause of action. Further, McCreary Tire has produced no evidence of a nexus between the stops of the four individual plaintiffs, and economic injury to it. Plaintiffs assert that William Simpson of McCreary Tire believed that the police actions were a major cause of a slowdown in McCreary Tire's operations, Plaintiffs Statement of Genuine Issues, paragraph 29, but this is not only an assertion based on a deposition not of record, but also the sheerest speculation on Simpson's part, which would not be admissible at trial. F.R.E. 602. (Even supposing that workers who resigned from McCreary Tire had themselves come forward and stated that

they had resigned as a result of the stops and searches of the four individual plaintiffs' cars, no reasonable jury could conclude that the incidents of violence and threats to nonstriking workers, were not in fact the real reasons for their resignations.)

■ More importantly, the interest that McCreary Tire is asserting that the defendants infringed by their actions is not one which is secured to them by the federal constitution or federal law. McCreary Tire is essentially claiming a property interest in the output of its workers which was infringed by the stops and searches of the individual plaintiffs' cars. To admit such an extravagant proposition would be to make an employer an injured party in every case in which an employee suffered Section 1983 injury.

■ Secondly, McCreary Tire may be asserting that the police officers who set up the line around the McCreary Tire plant did so negligently because they were not adequately trained to quell the potential violence between picketing strikers and nonstriking employees without slowing down the entry of workers to the McCreary plant. Again, the "right to uninterrupted production" which is the premise on which McCreary bases its argument is not a federally recognized one. Nor would negligent conduct by the police officers be actionable. *Daniels v. Williams,* 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986).

Third, McCreary Tire may be asserting, in a back-door attempt to avoid the general rule, that a litigant may sue for only his own constitutional injuries, *United States v. Raines,* 362 U.S. 17, 22, 80 S.Ct. 519, 523, 4 L.Ed.2d 524 (1960), that the police officers maliciously prosecuted the individual plaintiffs, and that this had the effect of injuring McCreary Tire. But this is nothing more than the first theory, stripped of the "antimanufacturer bias" element, and like the second theory, requires a federal right to unimpaired production, which we decline to create.

Apparently McCreary Tire's complaint rests solely on its sense that it was somehow unfair for the Pennsylvania State Police and Indiana Borough Police Department, on the scene of the strike due to acts of violence and threats of violence by strikers toward nonstrikers, to stop and cite nonstrikers and to confiscate their ballbats, saps, and clubs. The police officers' attempts to forestall escalation of the violence that had occurred in the strike to that date simply do not constitute a violation of any constitutional right of McCreary Tire.

*Errett, Coon, Huey, Damico*

Two actions by the police officers are challenged by plaintiffs: the initial stop and seizure of items from the plaintiffs' vehicles, and the filing of prosecutions for violations of 18 Pa.C.S. § 908. We review the actions of the officers under the standards set forth in *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), and *Anderson v. Creighton,* 483 U.S. 635, 641–42, 107 S.Ct. 3034, 3040, 97 L.Ed.2d 523, 532 (1987). The officers are entitled to summary judgment unless in light of clearly established precedent, the officers could not have reasonably believed that their actions were justified. This requires us to undertake two inquiries: the first, into the lawfulness of the officers' actions, and secondly, assuming that the actions were unlawful, whether their illegality is so clear that a jury would be justified in finding that the officers were "plainly incompetent or ... knowingly violate[d] the law." See *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed. 2d 271 (1986). An examination of the uncontested facts establishes that both inquiries must be answered in favor of the officers.

*Vehicle stop*

■ The officers who initially saw the offending items in each of the plaintiffs' vehicles were in a public place pursuant to lawful orders. From their places on the street, they observed items in plain view in plaintiffs' vehicles. Trooper Pedersen's actions in stopping plaintiff Huey's vehicle for an independent motor vehicle violation put her in the equivalent position, since an officer making a traffic stop has every right to look into the interior of the stopped

vehicle. See *New York v. Class*, 475 U.S. 106, 106 S.Ct. 960, 89 L.Ed.2d 81 (1986); *Harris v. United States*, 390 U.S. 234, 236, 88 S.Ct. 992, 993, 19 L.Ed.2d 1067 (1968). Next, the officers were entitled to use their reason and their awareness of the strike and its history of violence in concluding that the possession of a club, two socks containing glass bottles, a metal file (Erret), four baseball bats (Huey), a baseball bat (Coon), a golf club, a sawed-off baseball bat, and a slim jim (Damico) might be reasonably associated with criminal activity. Indeed, similar items had been previously confiscated from striking picketers, which plaintiffs point to as evidence of violent intent on the union strikers' part.

The request to plaintiff Damico to open his trunk does not change the nature of the police actions. There is no assertion that Damico did anything other than give his uncoerced consent to the request. We conclude that the officers made no search which required justification under the fourth amendment, much less one which offended the fourth amendment. See *Texas v. Brown*, 460 U.S. 730, 735–42, 103 S.Ct. 1535, 1539–43, 75 L.Ed.2d 502 (1983) (Opinion of Rehnquist, J.)

■ Turning to the second requirement of the *Harlow–Anderson* test, we observe in dictum without extended analysis that if the vehicle stops in this case were held to violate the federal constitution, the actions of the officers were objectively reasonable.[7] The conduct which plaintiffs allege the officers and troopers to have taken in this matter is so far from the type of oppressive or outrageous action against which Section 1983 provides a remedy, that to consider this a jury question would be to make every acquittal or dismissal of criminal charges grounds for imposing liability on the prosecuting officer.

## Filing of Charges

■ After the seizures of items from plaintiffs' vehicles, prohibited offensive weapons charges were filed against the plaintiffs. None of the plaintiffs was arrested on the scene or as a result of charges filed against them; all received citations in the mail, presumably also notifying them of the preliminary hearing date. Assuming this conduct to be allegedly in violation of the due process clause of the fourteenth amendment, for lack of probable cause, we must examine whether in light of pre-existing law the unlawfulness of filing prohibited offensive weapons charges was apparent. *Anderson v. Creighton*, 483 U.S. at 640, 107 S.Ct. at 3039, 97 L.Ed.2d at 531. The only plaintiffs' claims with which we should concern ourselves are Coon and Huey, the possessors of the seized baseball bats, since it was not only objectively reasonable but also plainly correct to decide that slim jims, clubs, socks filled with glass bottles, and a sawed off baseball bat were prohibited offensive weapons in Pennsylvania.

■ The baseball bats properly seized from Coon and Huey were held not to be prohibited offensive weapons under Pennsylvania law because they served a common lawful purpose. Precedent had clearly established that baseball bats were not "instruments of crime" under 18 Pa.C.S. § 907, the companion statute to the ones under which Coon and Huey were charged. *Commonwealth v. Senyszyn*, 266 Pa.Super. 480, 405 A.2d 535 (1979). However, at least one court had held that common ax handles could be prohibited offensive weapons depending on the circumstances in which they were possessed. *Commonwealth v. Morrison*, 19 Pa.D. & C.3d 72 (Blair C.P.1981). We cannot say therefore, that without legislative or judicial guid-

---

7. The dissent in *Anderson v. Creighton*, supra, chided the majority for creating the specter of a false dichotomy between police entitlement to qualified immunity and police liability for every misstep. 483 U.S. at 647 107 S.Ct. at 3043, 97 L.Ed.2d at 535. It is precisely the recognition that there must be a broad border between proper law enforcement procedures and the threat of damage suits, with disruptive and ex-

pensive discovery, which led the Court in *Anderson v. Creighton* to the acknowledgment that there is a range of legally incorrect police conduct which as a matter of law does not subject law enforcement officials to the threat of personal liability. 483 U.S. at 643, 646 n. 6, 107 S.Ct. at 3041, 3042 n. 6, 97 L.Ed.2d at 533, 535 n. 6.

ance, the officers were unreasonable in charging Coon and Huey as they did.

### The Suppression Hearing

 The last Section 1983 charge against the defendants advanced by the individual plaintiffs is alleged to be malicious prosecution for purposes of chilling their right to cross a picket line. This would require an examination of the subjective states of mind of the prosecuting officers which is unnecessary in light of the objective reasonableness of the police in filing the charges. *Lee v. Mihalich*, 847 F.2d 66, 72 n. 13 (3d Cir.1988). A further observation may be made, however, regarding the prosecutions against Erret and Damico, which were held for court at the magistrate's level but dropped after the suppression hearing court excluded the seized items.

In Pennsylvania, after a charge is held for court, it becomes the duty of the county prosecutor, the District Attorney, to supervise and prosecute criminal charges. 16 P.S. § 1402; 42 Pa.C.S. § 8931. As such, malicious motives by the defendants in this matter would be irrelevant, since the decision to prosecute after the establishment of a *prima facie* case is entirely out of their hands. The dictum by the majority in *Malley v. Briggs*, 475 U.S. 335, 344 n. 7, 106 S.Ct. 1092, 1098 n. 7, to the effect that a police officer who presents a search warrant affidavit lacking in probable cause is not insulated by the approval of that warrant by a judicial officer is not to the contrary, since in that context the affiant is the moving party in obtaining a warrant. In the prosecution of an established criminal action, on the other hand, an officer's desire to go forward or drop the charges is of no legal significance.

An appropriate order will follow.

### ORDER

AND NOW, this 29th day of March, 1989, it is

ORDERED, that the defendants' Motions for Summary Judgment are granted. The complaint is dismissed and the Clerk is directed to mark this matter closed.